**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

DAN JANNEY

     An Individual,

Plaintiff v.

NEWMONT CORPORATION,
And NEWMONT INTERNATIONAL SERVICES,
a part of NEWMONT CORPORATION.

     A Delaware Corporation

     Defendant.

_____

**COMPLAINT AND REQUEST FOR JURY TRIAL**
_____

Plaintiff Dan Janney, through his attorney, Steven L. Murray of Murray Law, LLC, submits his Complaint and Request for Jury Trial against Defendant, Newmont Corporation, including Newmont International Services, an entity part of Newmont Corporation. [collectively, Newmont or Defendant].

**I.  OVERVIEW**

1. This case is an employment discrimination and retaliation action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e - 2000e-17, et seq. as amended. [Title VII].

2. Dan Janney [Janney or Plaintiff] is a former employee of Newmont.

3. Janney served as Newmont's Regional Senior Vice President for North America.

4.   Janney has received international recognition as a leading executive in the mining industry.

5.   Janney is Catholic.

6.   Newmont imposed a COVID-19 vaccine mandate/requirement.

7.   Newmont issued a policy requiring Janney to strongly encourage other Newmont employees to take the vaccine, and strongly support the vaccine mandate.

8.   Janney requested Newmont to grant him a proper and reasonable accommodation/exemption based on his sincerely held religious beliefs to Newmont's COVID-19 vaccine mandate/requirement. The terms exemption and accommodation are used interchangeably herein.

9.   Newmont denied Janney's request for accommodation.

10.   On August 4, 2021, Newmont terminated Janney's employment because he did not take the vaccine, strongly encourage other Newmont employees to take the vaccine, and strongly support the vaccine mandate and Newmont's related program.

11.   Effective April 1, 2023, Newmont canceled/rescinded its mandate requiring employees to take the COVID-19 vaccine.

12.   Janney seeks legal and equitable relief for Defendant's intentional and unlawful religious discrimination and retaliation. He asserts five claims.

13.   Janney's first claim alleges Newmont engaged in religious discrimination by denying his request for a reasonable accommodation, based on his sincerely held religious beliefs, to Newmont's COVID-19 vaccine mandate and terminating his

employment.

14.    Janney's second claim alleges Newmont discriminated against him based on his sincerely held religious beliefs in the terms and conditions of his employment, resulting in the termination of his employment.

15.    Janney's third claim alleges Newmont retaliated against him because he requested a reasonable accommodation based on his sincerely held religious beliefs.

16.    Janney's fourth claim alleges Newmont retaliated against him because of his opposition to taking the COVID-19 vaccine, based on his sincerely held religious beliefs.

17.    Janney's fifth claim alleges Newmont retaliated against him because of his opposition, based on his sincerely held religious beliefs, to Newmont's directive and requirement he "strongly encourage" other Newmont employees to take the COVID-19 vaccine,  strongly support Newmont's vaccine mandate, and related vaccine program.

## II.  <u>PARTIES</u>

18.    Newmont is a Delaware corporation registered with the Colorado Secretary of State to conduct business in Colorado.

19.    Newmont conducts business in Colorado.

20.    Newmont's Corporation's headquarters are in Denver, Colorado.

21.    Newmont International Services is a part of Newmont Corporation. Newmont Corporation and Newmont International Services are collectively referenced as Newmont.

22.    Newmont Corporation offered Janney his employment position and supervised and coordinated the terms and conditions of his employment from its

headquarters in Denver.

23.    Newmont's corporate office: (1) issued the vaccine mandate requiring Janney's compliance, (2) created and administered the process for Janney to request an accommodation to the mandate, (3) conducted and administered the required interactive process in which Janney participated, (4) evaluated Janney's participation and responses in the interactive process, (5) evaluated Janney's accommodation request,  and (6) made the decisions (a) requiring Janney to strongly encourage other Newmont employees to take the vaccine and support Newmont's vaccine mandate, and (b) terminating Janney's employment.

24.    Janney's first and second-level supervisors were based in Newmont's corporate office.

25.    Janney's first level supervisor was Robert Atkinson, Newmont's Chief Operating Officer [COO].

26.    Atkinson reported to Tom Palmer, Newmont's Chief Executive Officer [CEO] and Janney's second level supervisor.

27.    During the events in issue, Janney lived in Utah and worked for and reported to Newmont's corporate headquarters in Denver.

### III.    JURISDICTION AND VENUE

28.    This Court has proper jurisdiction under 42 U.S.C. §§ 2000e, 2000e-5, and 2000e-5(f)(1)(3), as amended, and the Civil Rights Act of 1991, 42 U.S.C. §§ 1981a (a)(1), (b)(2)(3)(D), (c)(1)(2), and (d)(1)(A)(2).

4

29.   This Court has jurisdiction under 28 U.S.C. §§ 1331,1343(a)(3)(4).

30.   Janney was an employee of Newmont under Title VII, and Newmont was Janney's employer under Title VII.

31.   Venue is proper in this Court under 28 U.S.C. § 1391(a)(1), (b)(1)(2), (c)(2) because a substantial part of the events or omissions giving rise to Janney's claims occurred in this judicial district because , as discussed, Newmont's corporate officials made all decisions in issue from or in Newmont's corporate office in Denver, and conducted all discussions and deliberations in issue from or in Newmont's corporate office.

32.   Venue is proper under 42 U.S.C. § 2000e-5(f)(3), and 42 U.S.C. §1988(a).

33.   Under the Title VII venue provision, 42 U.S.C. § 2000e-5(f)(3), venue is proper in this judicial district because the unlawful employment practices are alleged to have been committed in this judicial district.

34.   All relevant discussions between Janney and Newmont officials were with officials based in Newmont's corporate office in Denver.

35.   All discussions, considerations, and decisions made by Newmont about Janney were made by Newmont's corporate officials in Newmont's corporate office in Denver including Newmont: (1) issuing the vaccine mandate requiring Janney's compliance, (2) creating and administering the process for Janney to ask for an accommodation to the mandate, (3) conducting and administering the required interactive process in which Janney participated, (4) evaluating Janney's participation and responses in the interactive process, (5) evaluating Janney's accommodation request, and (6)

making the decisions (a) requiring Janney to strongly encourage other Newmont employees to take the vaccine and support Newmont's vaccine mandate, and (b) terminating Janney's employment.

36.    Also, under the Title VII venue provision, 42 U.S.C. § 2000e-5(f)(3), venue is proper in this judicial district because the employment records relevant to the employment practices in issue are maintained and administered in this judicial district in Newmont's corporate office in Denver.

## IV.  ADMINISTRATIVE PROCEDURES

37.    Before filing this action, Janney timely, properly, and lawfully exhausted all required administrative prerequisites, procedures, and remedies.

38.    Janney filed a timely religious discrimination and retaliation charge with the Equal Employment Opportunity Commission [EEOC].

39.    On September 25, 2023, the EEOC mailed Janney a right-to-sue letter. This action is timely filed because it is filed within ninety days of Janney's receipt of the Notice of Right to Sue letter.

## V.  ALLEGATIONS

### A. Background

40.    Janney is fifty-four years of age.

41.    Newmont hired Janney in May 2017.

42.    Janney served as Regional Senior Vice President for North America until August 4, 2021; the date Newmont terminated his employment.

43.    Newmont recognized Janney as among the top fifteen leaders at Newmont,

an international company with over 14,000 employees and 15,000 third-party workers.

44.  Janney oversaw the North American region, which included a workforce of over 9,000 people, including over 5,000 employees and almost 4,000 third-party workers.

45.  Janney's duties included managing all mining operations in Mexico, the United States, and Canada, as well as managing the largest group of employees in the company.

46.  Because of Janney's experience, talent, and job performance, Newmont highly compensated Janney.

47.  In 2020, Janney's approximate total compensation from Newmont was approximately $1.06 million dollars. Janney projected his total compensation to increase for 2021.

48.  Janney had an excellent performance and disciplinary/conduct record with Newmont.

49.  Janney consistently earned outstanding performance ratings, pay raises, bonuses, and awards.

50.  In March 2021, Newmont gave Janney his performance evaluation for 2020, the last performance he received from Newmont.

51.  In Janney's performance evaluation for 2020, which he received in March 2021, Newmont gave him the highest rating possible for evaluations in the Newmont corporation.

52.  Based on Janney's experience with Newmont, less than three percent of

Newmont's employees received an evaluation rating equal to his above rating.

## B. Discussions Before Accommodation Request

53.    In March 2020, when concern about the COVID-19 pandemic began, Janney worked from his home in Herriman, Utah, and traveled as needed, respecting travel restrictions internationally, nationally, and locally.

54.    Janney's position required extensive international and domestic travel.

55.    In 2020, Janney made several business trips to Mexico and Canada. He spent about six to eight weeks in Mexico during one period.

56.    In early March 2021, Janney, in a conversation with Atkinson, informed him he was not taking the vaccine for religious reasons.

57.    In March of 2021, Palmer, Newmont's CEO, asked the global  leadership team to support the company's position by strongly: (1) encouraging the workforce to be vaccinated as soon as the vaccine becomes available, and (2) supporting Newmont's vaccine mandate.

58.    Janney was a member of Newmont's global leadership team.

59.    On March 24, 2021, Janney informed Atkinson and Newmont of his decision not to take any approved vaccines for COVID-19 because of his sincerely held religious beliefs.

60.    When Atkinson asked Janney for an explanation, he explained: (1) he was Catholic, (2) he opposed taking the vaccine and the vaccine mandate, (3) his views on abortion were based on his sincerely held religious beliefs, and (4) the available COVID-19 vaccines were made with or tested on aborted fetal tissues.

61.    Janney informed Atkinson and Newmont that because he was firmly against abortion for religious reasons, he could not compromise his principles to benefit from a vaccine created from the death of another individual, particularly in the case of abortion.

62.    As for Newmont requiring Janney to support the vaccine, Janney explained: (1) he had a religious basis for opposing the vaccine, (2) vaccines should be a personal decision, (3) he could not strongly encourage other Newmont employees to take the vaccine, and (4) he could not strongly support Newmont's vaccine mandate and vaccine program.

63.    Janney informed Newmont many times he would take no action, and he took no action to (1) harm Newmont's vaccination program concerning other employees, (2) undermine the vaccine, (3) discourage anyone from taking it, or (4) actively engage them in any way on the issue.

64.    Janney informed Newmont that if the vaccine issue were presented to him by another employee, he would strongly encourage employees to discuss it with their personal healthcare provider and make the proper choice based on their private circumstances.

65.    Janney informed Newmont that his vaccination status did not have to be revealed to anyone, and he would remain silent if he were asked about it.

66.    Atkinson told Janney he could not have him in his position leading the largest group of employees in the company if he were not vaccinated; noting it was not a good look to be pushing the vaccine and the mandate, and have Janney, the leader, not vaccinated.

67. Atkinson directed Janney to cancel his trip to Denver the next week to attend an Executive Leader Meeting.

68. When Janney asked why he could not attend, Atkinson responded that Janney was not vaccinated. Janney replied that an unvaccinated person should not be a threat to those who were vaccinated, which was the rest of the team. Atkinson agreed, saying: "I know, but it is just the optics of it."

69. Also, Atkinson directed Janney not to travel to the Colorado mine in the coming weeks to visit with him and the team at the mine.

70. At this point, Janney concluded Newmont would exclude him from key functions of his position because of his decisions.

71. Atkinson asked Janney if he would speak to a Newmont medical provider/consultant. Janney complied; speaking to the provider/consultant on March 29, 2021.

72. On April 16, 2021, Atkinson asked Janney if he had thought any more about the vaccine, and Janney told him he had made up his mind.

73. Atkinson told Janney that Newmont would consider his employment separation a resignation if he did not get the vaccine.

74. Janney replied that the separation did not feel like a resignation because Newmont was forcing his resignation.

75. Atkinson commented that it would be very costly for Janney, meaning – Newmont would not pay Janney any severance compensation, and he would "leave a lot of money on the table."

76. Janney told Atkinson he was aware of the money involved with his decision on whether he should be terminated or resign.

77. Janney feared the loss of his: (1) job, (2) salary, (3) unvested stock shares in Newmont, (4) health insurance and related care, and (5) unvested pension in which he would vest in eight months.

78. Janney felt threatened, intimidated, and pressured by Atkinson's comments about the financial losses he would incur if he did not take the vaccine.

79. Janney felt pressured by the comments/directions from Atkinson and viewed these communications as undermining his right to request and receive the religious accommodation and adopt his position on Newmont's vaccine program.

80. Janney shared with Atkinson and Newmont that his separation had the potential to harm his career, and this factor caused him significant stress and sleepless nights.

81. Janney suffered severe stress, loss of sleep, and worry about Newmont forcing him to choose between his religious beliefs and losing his job, which would cause the loss of salary, pension, unvested stock grants, and health insurance, which was particularly important during the pandemic.

82. The above compelled choice jeopardized Janney's plans for himself and his family.

83. On April 25, 2021, Atkinson informed Janney of the need for a meeting between Janney and Jennifer Cmil, Executive Vice President of Human Resources, because Cmil wanted to talk to Janney and support him.

84.  Janney and Cmil spoke on April 29, 2021.

85.  Cmil asked Janney to explain his thoughts, and Janney outlined his views as discussed above, including his religious views and religious-based opposition to the vaccine.

86.  Cmil told Janney that Newmont would look into a religious exemption for him; however, "these exemptions were very specific," and she was not sure it would apply in his case.

87.  Cmil did not support Janney.

88.  Cmil's discussion prejudiced Janney because she: (1) implicitly discouraged Janney from applying for the exemption, (2) prejudged the merits of his accommodation request, and (3) served as Newmont's decisionmaker when Newmont denied his application for the accommodation.

89.  On July 24, 2021, Atkinson called Janney and asked if he had changed his mind. When Janney replied that he had not, Atkinson told him there would be an action soon.

### C. Janney's Accommodation Request

90.  Janney submitted his accommodation request to Atkinson on July 28, 2021.

91.  Janney's request stated that his "principles have been developed over years of religious upbringing, contemplation, and life experiences."

92.  Janney explained he had spent considerable time researching and reflecting on his stance, and this reflection further solidified his belief that it was wrong for him to benefit from anything derived from the death of another, particularly when the other had

no choice in their fate.

93.   Janney's stated religious beliefs are in the form of ultimate ideas, meaning – beliefs relating to matters of life and death, right and wrong, and good and evil, as well as his underlying theories about his faith, beliefs, and practices.

94.   Janney repeatedly explained his religious faith, beliefs, and practices to Newmont.

95.   Janney sufficiently placed Newmont on notice of the nature of his objection to the COVID-19 vaccine, including his subjective beliefs, how his beliefs arose from his religious belief system, and how his beliefs supported his objection to the COVID-19 vaccination.

96.   Janney noted that Cmil had told him Newmont would look into an accommodation for him, but she had not followed up on their discussion on April 29, 2021.

97.   Janney stated that he had considered how his stance might impact his employment with Newmont and 30-year career.

98.   Janney stated: "I enjoy working for you [Atkinson] personally and want to continue my career at Newmont.

99.   Janney asked Atkinson and Newmont to accommodate his request for an accommodation based on his sincerely held beliefs.

100. Janney explained he had traveled to Mexico many times in the past year and followed all required protocols of PCR tests, masks, social distancing, and other measures. The Mexico border continued to be open, and the Canadian border would open shortly.

13

101.  Janney told Newmont he would happily follow all travel protocols, including PCR tests, quarantines, social distancing, masks, and related measures.

102.  Janney explained that Newmont continued to allow employees to travel, including flying in and out and driving in and out, for employees working Newmont's mines without proof of vaccination; however, the company had required proof of vaccination for all others traveling to the mines or offices.

103.  Janney stated he was "more than willing to discuss any other reasonable accommodation that could be proposed" to let him continue in his role.

104.  Atkinson shared Janney's request with Cmil, Executive Vice President of Human Resources.

### D.  Interactive Process

105. Newmont, after receiving Janney's accommodation request, assigned Robert Jorga and Darien Krimmert, Senior Human Resource Business Partners, to conduct and engage in the interactive process with Janney.

106. Janney participated in the interactive process via Webex on Thursday, July 29, for a one-hour discussion.

107.  In the interactive meeting, Janney informed Newmont that his request for an accommodation was based on his sincerely held religious beliefs.

108.  In the interactive meeting, Janney:

(1)  Disclosed and explained his Catholic faith.

(2)  Explained that he opposed abortion through and because of his Catholic faith and opposed vaccines made with or tested on aborted fetal tissues.

14

(3) Explained he could not compromise his religious principles by seeking to benefit from a vaccine created from the death of another individual, particularly in the case of abortion.

(4) Repeatedly stated in response to Newmont's repeated questions about his position on Newmont's requirements that he strongly encourage other Newmont employees to take the vaccine and strongly support the vaccine mandate and the related vaccine program, he could not strongly encourage individuals to take the vaccine and he could not support the vaccine mandate because of his sincerely held religious beliefs.

(5) Stated his beliefs and positions on Newmont's vaccine mandate and related policies would not make him any less effective in his job and would not impact Newmont's polices on the vaccine.

(6) Explained he would not speak out against the vaccine but would tell employees to consult with their personal healthcare provider and make decisions based their own circumstances.

109. Janney viewed the process as discriminatory, intrusive, and retaliatory because Newmont's officials: (1) asked him deeply personal questions about his faith and sincerely held religious beliefs, despite Janney disclosing and explaining his religious faith and beliefs and his position on abortion as it related to his faith, (2) conducted the process as an interrogation, (3) placed Janney on the defensive, and (4) asked him invasive questions about his religious beliefs, vaccination status, the source of his information, and his decision on seeking the accommodation.

### E.  Newmont Denies Janney's Accommodation Request

110.   Newmont denied Janney's accommodation request on August 2, 2021, in a letter from Cmil.

111.   Newmont's denial alleged; it denied Janney's request "because [he had] not established a legal basis requiring an exemption/reasonable  accommodation  under applicable  law."

112.   Newmont's denial alleged; the "objective  facts  and circumstances, including your own statements and actions, indicate that you have decided not to get  the COVID-19  vaccine  based  on  your  personal  choice/preference.  Although  you  have referred to religion, you have not established a sincerely held religious belief, practice or by law in order to be eligible for a reasonable accommodation."

113.   Newmont's denial alleged; even "if  you  could  establish  this  threshold requirement,  there  is  no  reasonable  accommodation  that  could  be  provided  to  you as the Regional Senior Vice President, North America, which would not pose an undue hardship as defined by law."

114.   Newmont's denial alleged; Janney declared that he could not and would not support the Newmont requirements: "you not being vaccinated and stating you can't and won't support 'the requirements.'"

115.   Janney's request for religious accommodation met the legally required standard for granting a reasonable accommodation based on religion.

116.   Newmont did not meet the legally required standard for showing it would have suffered an undue burden if it had granted Janney his accommodation request.

**F.  Newmont Terminates Janney's Employment**

117.  On August 4, 2021, Janney met with Atkinson and Cmil.

118.  Atkinson asked Janney if he would resign.

119.  Janney responded that resignation is voluntary, and Newmont's actions did not make him feel his separation was voluntary but forced and compelled.

120.  At this point, Newmont terminated Janney's employment as the Regional Senior Vice President for North America, effective immediately on August 4, 2021.

121.  Atkinson wrote Newmont's August 4, 2021, letter terminating Janney's employment, stating:

> (1)  "In short, you are being terminated for cause based on your refusal to support Newmont's position of strongly encouraging the workforce to be vaccinated and the company's other vaccine-related policies, and because of your inability to perform all of your duties as Regional Senior Vice President in a timely, efficient and effective manner due to your own decision not to get vaccinated."
>
> . . . .
>
> (2)  "As a senior leader in Newmont, refusing to strongly encourage and promote vaccination as a critical control in the fight against the pandemic is unacceptable."

**G.  Newmont's Post-Employment Harm to Janney**

122.  Following Janney's termination from employment, Atkinson was quoted in the media about the termination.

123.  The media articles discussed Janney's medical status by revealing he had not been vaccinated and he did not support Newmont's vaccine mandate and related program and polices.

124.  Based on information and belief, the articles resulted from Newmont's

17

release of information about Janney's termination.

125.    Based on Janney's experience with Newmont, this type of publicity about the departure of a senior leader is against the policies and practices as he understood them, meaning – the articles unnecessarily revealed Janney's medical status and his religious opposition to the vaccine and Newmont's related vaccine program.

126.    Following Janney's separation from Newmont, he had enormous difficulty finding employment.

127.    Janney's difficulty finding employment contrasted starkly with his employability before his termination by Newmont.

128.    Janney believes Newmont's statements created a stigma about him and hurt his ability to find comparable employment.

129.    Based on information and belief, Newmont's statements, and release of information about Newmont resulted from Janney's assertion of his sincerely held religious beliefs and opposition to Newmont's vaccine mandate and related vaccine programs, policies, and directives.

130.    A reasonable inference is that the articles and Newmont's actions harmed Janney's efforts to find comparable employment.

**H.  Janney's Sincerely Held Religious Beliefs and Newmont's Actions**

131.    Janney based his request for religious accommodation and his position on Newmont's vaccination program on his sincerely held religious beliefs.

132.    Janney  informed and explained to Newmont his sincerely held Catholic and Christian beliefs.

133.    Janney believes any cooperation in the evil of abortion is against the Catholic faith.

134.    Janney's sincerely held religious beliefs are based on: (1) his deeply held moral core values based on a well-formed conscience through religion and (2) principles he developed and adopted over years of religious upbringing, contemplation, and life experiences.

135.    Janney spent considerable time researching and reflecting on the positions he asserted during his Newmont employment, and his reflection further solidified his belief that it was wrong for him to benefit from anything derived from the death of another, particularly when the other had no choice in their fate.

136.    Janney's stated religious beliefs are in the form of ultimate ideas, meaning – beliefs relating to matters of life and death, right and wrong, and good and evil, as well as his underlying theories about his faith, beliefs, and practices.

137.    Janney's sincerely held religious beliefs are his individual beliefs based on his Catholic and Christian faith, his faith in the Holy Trinity, which includes his faith and belief in the Father, Jesus Christ, the Son, and the Holy Spirit.

138.    Janney's beliefs are not dependent on specific detailed beliefs of any organized faith, denomination, or religious leader.

139.    Janney's faith and beliefs include his belief that it is not moral for him to take, facilitate, promote, or mandate the COVID-19 vaccine.

### I.   Newmont's Harm to Janney

140.    Because of the positions Janney took, developed, and asserted to Newmont

based on his sincerely religious beliefs, Newmont took actions causing Janney to lose: (1) his job as a senior leader at the apex of his career, (2) his health insurance and care, (3) most of the professional equity of a thirty-year career, (4) his salary, (5) his unvested stock shares in Newmont, and (6) his pension, in which he would have vested in eight months.

141.    Newmont forced Janney to choose between a job he loved at the height of his career and a compromise of his religious beliefs.

142.    As a direct, foreseeable, and proximate result of Newmont's unlawful, intentional discrimination, Janney suffered compensatory damages and injuries, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

143.    As a direct, foreseeable, and proximate result of Newmont's unlawful, intentional discrimination, Janney suffered economic damages and losses, including but not limited to lost earnings and potential earnings, including an actual loss of wages, income, benefits, diminution of earning capacity, loss of actual retirement benefits, and future monetary losses.

144.    Newmont's unlawful employment practices were willful or done with malice or reckless indifference to Janney's rights under the laws of the United States to be free from religious discrimination in employment.

## VI.  CLAIMS FOR RELIEF

### FIRST CLAIM

**[Religious Discrimination – Reasonable Accommodation & Discharge]**

145. Janney incorporates and restates all allegations previously asserted in this Complaint.

146. Janney asserts this claim for unlawful religious discrimination in violation of Title VII concerning Newmont's denial of his request for a religious accommodation and its subsequent termination of his employment.

147. Title VII prohibits employment discrimination based on religion. 42 U.S.C. § 2000e–2(a)(1)(2).

148. Title VII's prohibition on religious discrimination includes an employer's refusal to accommodate an employee's religious beliefs or practices unless the accommodation imposes an undue hardship. 42 U.S.C. § 2000e(j).

149. Title VII broadly defines the word "religion."

150. Title VII defines religion to include "all aspects of religious observance and practice, as well as belief unless an employer demonstrates that [it] is unable to reasonably accommodate" an employee's "religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

151. Title VII's definition of religion is broad and protects beliefs, practices, and observances the employer may oppose, reject, or be unfamiliar with.

152. An employer should ordinarily assume that an employee's request for religious accommodation is based on a sincerely held religious belief, practice, or observance. EEOC Guidance: What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws. *Technical Assistance Questions and Answers - Updated on July 12, 2022.*

153. An employer must give an individual's assertion that a belief is an essential part of the person's religious faith great weight.

154. An employee has the right to a reasonable workplace accommodation to the person's religious beliefs and practices if the employee demonstrates a bona fide religious belief that conflicts with an employment requirement.

155. A "bona fide religious belief" is a belief that (1) is religious within the employee's own scheme of things and (2) is sincerely held.

156. An employer's proper inquiry is whether an employee held bona fide religious beliefs that are (1) within their own scheme of things and (2) sincerely held.

157. The proper inquiry is not whether Janney's religious beliefs are reasonable, well-known, make sense, or even odd.

158. The law does not require each Janney's religious beliefs to receive Newmont's approval in considering their accommodation requests.

159. If an individual's beliefs are religiously based, it is not for Newmont to ask if those beliefs are derived from revelation, study, upbringing, gradual evolution, or some source that seems entirely incomprehensible.

160. Employers may not engage in an extensive inquiry into an employee's religious beliefs to determine whether religion mandates the employee's adherence.

161. The analysis of the requested accommodation and an employer's asserted undue burden must be determined on a case-by-case basis, considering the factual context of each case.

162. Upon information and belief, Newmont conducted a de facto, discriminatory

22

sham process for applying for a reasonable accommodation based on religion to the COVID-19 vaccine mandate because Newmont did not grant any employee's request for a religious accommodation to the vaccine mandate.

163.   Janney is aware of other Newmont employees who asked for a reasonable accommodation based on religion to the vaccine mandate.

164.   Janney does not know of any person or instance where Newmont granted an employee a religious accommodation to Newmont's vaccine mandate.

165.   Newmont never informed Janney it had granted any Newmont employee a reasonable accommodation based on religion to the COVID-19 vaccine.

166.   Newmont conducted a discriminatory and improperly invasive process for evaluating Janney's request for a religious accommodation and made a discriminatory decision to deny his accommodation and terminate his employment.

167.   Newmont's process was discriminatory because it: (1) repeatedly asked Janney invasive, personal questions unrelated to his ability to perform his job, which he viewed as improperly intrusive and intimidating, and (2) repeatedly asked Janney questions which improperly probed into his religious faith, practices, and beliefs and were unrelated to his accommodation request.

168.   Newmont's process was discriminatory because it repeatedly asked Janney questions about his medical history unrelated to his request for accommodation.

169.   Newmont's process and decision were discriminatory because it did not have an objective basis to subject Janney to the discriminatory and improperly invasive process for evaluating Janney's request for a religious accommodation and made a discriminatory

23

decision to deny and terminate his employment.

170. Newmont's process and decision were discriminatory because the law requires the evaluation of an accommodation be conducted on a case-by-case basis, and Newmont did not give Janney's application the required analysis.

171. At all times, Janney performed his job duties satisfactorily.

172. Janney held bona fide, sincerely held religious beliefs that conflicted with Newmont's job requirements that he take the COVID-19 vaccine, and strongly encourage other Newmont employees to take the vaccine, and strongly support the vaccine mandate. [vaccine support requirements].

173. Janney informed Newmont of his bona fide, sincerely held religious beliefs.

174. Janney informed Newmont of the conflict between his bona fide, sincerely held religious beliefs, and Newmont's requirement that he take the COVID-19 vaccine and Newmont's vaccine support requirements.

175. Janney requested Newmont to grant him a reasonable accommodation, based on his sincerely held religious beliefs, to the COVID-19 vaccine mandate and the vaccine support requirements.

176. Janney's requested accommodation would not have changed or modified his duties and responsibilities from the duties and responsibilities he had with Newmont before he asked for the accommodation.

177. Janney followed Newmont's process and procedure for requesting a reasonable accommodation to the COVID-19 vaccine mandate and vaccine support requirements.

178.   Newmont denied Janney's above request for a reasonable accommodation.

179.   Newmont would not have suffered the legally required undue burden if it had granted Janney the requested accommodation.

180.   Newmont terminated Janney's employment for not taking the COVID-19 vaccine, a job requirement, and for not complying with its vaccine support requirements.

181.   Janney did not take the COVID-19 vaccine and did not comply with the vaccine support requirements because to do so would violate his sincerely held religious beliefs.

182.   Newmont did not offer Janney any alternatives to taking the vaccine to address the COVID-19 vaccine and meeting the related vaccine support requirements, including but not limited to wearing a mask, self-monitoring for symptoms, voluntary reporting of potential symptoms, and reasonable testing requirements (PCR Tests), quarantining, and scanning for temperature at the worksite.

183.   Newmont's treatment of Janney is unlawful religious discrimination in violation of Title VII and an intentional, unlawful discriminatory practice in violation of 42 U.S.C. § 1981a.

184.   Newmont unlawfully and intentionally discriminated against Janney based on religion by taking the following adverse employment actions:

    (1) Denying Janney's request for a reasonable accommodation, based on his sincerely held religious beliefs, to Newmont's COVID-19 vaccine mandate.

    (2) Terminating Janney's employment because he did not take the vaccine, opposed Newmont's vaccine mandate and the related vaccine support

requirements.

(3) Terminating Janney's employment because he requested a religious accommodation to the COVID-19 vaccine mandate and the related vaccine support requirements.

(4) Denying Janney's request for a religious accommodation without showing how Newmont would suffer an undue burden by granting Janney the requested accommodation.

(5) Denying Janney's request for a religious accommodation by conducting a discriminatory and improperly intrusive interactive process, which included a discriminatory and improper inquiry into Janney's bona fide religious beliefs without Newmont having any facts to provide an objective basis for questioning either the religious nature or the sincerity of his beliefs, practices, or observance, to justify Newmont requesting intrusive information.

(6) Subjecting Janney to a process where Newmont effectively prejudged and prejudiced his rights to request and receive a religious accommodation.

(7) Subjecting Janney to a process where Newmont judged the acceptability of his religious belief by asking invasive questions relating to the legitimacy, depth, and scope of his religious beliefs, the length of his beliefs, his adherence to his beliefs, and questions unrelated to his request for the religious accommodation.

(8) Conducting a discriminatory and futile process for Janney to (a) apply for

26

the accommodation, (b) engage in a nondiscriminatory interactive process, and (c) receive a fair and favorable decision on his request for the religious accommodation because, upon information and belief, Newmont conducted a closed, de facto process of denying all requests for accommodations based on religion to the COVID-19 vaccine.

## SECOND CLAIM

### [Religious Discrimination – Disparate Treatment - Terms & Conditions]

185.  Janney incorporates and restates all allegations previously asserted in this Complaint.

186.  Title VII prohibits employers from discriminating against employees based on religion.

187.  Under Title VII, employers are prohibited from (1) discharging any individual or otherwise discriminating against any individual regarding the employee's compensation, terms, conditions, or privileges of employment because of the individual's religion, or (2) limiting, segregating, or classifying an employee in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect the person's status as an employee, because of the person's religion. 42 U.S.C. § 2000e2(a)(1)(2).

188.  Janney was qualified for his position, and he successfully performed his duties.

189.  Janney belongs to a Title VII protected class based on religion because he asserted his sincerely held religious beliefs, opposed the vaccine mandate, and related

27

vaccine support requirements, and requested a religious accommodation.

190.   Janney informed Newmont of his sincerely held religious beliefs.

191.   Newmont was aware of Janney's sincerely held religious beliefs and his Title VII-protected status based on religion.

192.   Newmont adversely segregated Janney and his work assignment and duties because of his protected religious status described above,

193.   Newmont terminated Janney's employment because of his religion.

194.   Newmont intentionally discriminated against Janney by terminating his employment because of his religion.

195.   The effect of the practices complained of in the above practices has been to deprive Janney of equal employment opportunities and otherwise adversely affect his status as an employee because of his religion.

196.   Newmont's actions occurred under circumstances giving rise to an inference of discrimination.

197.   To the extent Newmont has any justifications for terminating Janney's employment, the justifications are unworthy of credence and belief, and Newmont did not act for any asserted nondiscriminatory reasons.

198.   Considered in its totality and cumulative manner, Newmont's treatment of Janney was unlawful religious discrimination prohibited by Title VII.

199.   Newmont's treatment of Janney is unlawful religious retaliation and discrimination in violation of Title VII and an intentional, unlawful discriminatory practice in violation of 42 U.S.C. § 1981a.

28

## THIRD CLAIM

### [Retaliation Re: Opposition to Vaccine Mandate]

200. Janney incorporates and restates all allegations previously asserted as though incorporated.

201. Janney asserts this claim against Newmont for unlawful retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a).

202. Title VII prohibits an employer from discriminating against an employee because the individual opposed any unlawful employment practice under the Act, made a charge, or participated in any investigation or proceeding. 42 U.S.C. § 2000e-3(a).

203. Janney had a good faith belief Newmont engaged in discriminatory and retaliatory conduct in violation of Title VII.

204. Janney engaged in protected Title VII activities and opposed discriminatory and retaliatory conduct prohibited by Title VII.

205. Janney engaged in protected opposition to religious discrimination by and through his repeated opposition to: (1) taking the vaccine, (2) the directive to keep quiet about his religious faith and the vaccine, (3) the requirements he strongly encourage other Newmont employees to take the vaccine and strongly support the vaccine mandate'

206. Janney expressed his opposition in the above paragraph to Atkinson, Cmil, and the officials in the interactive process.

207. At all times, Newmont was aware of Janney's protected Title VII activities.

208. Newmont intentionally retaliated against Janney by subjecting him to continual, intentional, cumulative, increasingly severe, and materially adverse

29

employment actions that might deter a reasonable person from engaging in protected activity.

209. Newmont's adverse material actions against Janney include but are not limited to (1) engaging in an improper inquiry of Janney's sincerely held religious beliefs, (2) subjecting Janney to a discriminatory application and interactive process, and (3) acting to threaten or cause fear in Janney concerning his exercise of his right to (a) object to the COVID-19 vaccine mandate based on his religious beliefs and (b) exercise his right to seek and receive a religious accommodation/exemption to the mandate.

210. Moreover, Newmont's adverse material actions against Janney include Newmont (1) denying his request for the accommodations/exemptions in issue, (2) terminating his employment, and (3) engaging in the post-employment retaliation previously described in this Complaint, in which Newmont stigmatized Janney and harmed his employability after his termination from Newmont.

211. A causal connection exists between Janney's protected activities and Newmont's unlawful materially adverse employment actions against Janney. Newmont, contemporaneously with and/or right after each of Janney's protected activities, engaged in an intentional, calculated, and purposeful campaign of unlawful retaliation, subjecting him to intentional, cumulative, materially adverse actions.

212. The intentional, unlawful retaliation was created, perpetrated, and/or tolerated by Newmont's officials, managers, and employees.

213. Newmont's treatment of Janney, considered in its totality and cumulative manner, is direct, intentional, and materially adverse actions constituting unlawful

retaliation and discrimination prohibited by Title VII.

214.  Newmont's treatment of Janney is unlawful intentional retaliation and discrimination in violation of Title VII, 42 U.S.C. § 2000e-3(a), and an intentional, unlawful discriminatory practice in violation of 42 U.S.C. § 1981a.

## FOURTH CLAIM

### [Retaliation re: Reasonable Accommodation Request]

215.  Plaintiff incorporates and restates all allegations previously asserted in this Complaint.

216.  Janney asserts this claim against Newmont for unlawful retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a).

217.  Janney had a good faith belief Newmont engaged in discriminatory and retaliatory conduct in violation of Title VII.

218.  Newmont retaliated against Janney because he submitted his request for a reasonable accommodation and participated in Newmont's mandated interactive process.

219.  Janney engaged in protected activities by opposing the requirement he take the vaccine based on his sincerely held religious beliefs, and: (1) applying for a reasonable accommodation based on his sincerely held religious beliefs and (2) engaging in the interactive process.

220.  Janney incorporates his prior statements in this Complaint setting forth his protected activities and protected opposition to religious discrimination.

221.  At all times, Newmont was aware of Janney's protected Title VII activities.

222.  Newmont intentionally retaliated against Janney by subjecting him to

continual, intentional, cumulative, increasingly severe, and materially adverse employment actions that might deter a reasonable person from engaging in protected activity.

223. Janney incorporates his prior statements in this Complaint setting forth Newmont's adverse material actions against him.

224. Janney incorporates his prior statements in this Complaint setting forth the casual connection between his protected activities and opposition to religious discrimination and Newmont's adverse material actions against him.

225. The intentional, unlawful retaliation was created, perpetrated, and/or tolerated by Newmont's officials, managers, and employees.

226. Newmont's treatment of Janney, considered in its totality and cumulative manner, is direct, intentional, and materially adverse actions constituting unlawful retaliation and discrimination prohibited by Title VII.

227. Newmont's treatment of Janney is unlawful intentional retaliation and discrimination in violation of Title VII, 42 U.S.C. § 2000e-3(a), and an intentional, unlawful discriminatory practice in violation of 42 U.S.C. § 1981a.

## FIFTH CLAIM
### [Retaliation re: Newmont's "Strongly Encourage" Vaccine Requirement]

228. Plaintiff incorporates and restates all allegations previously asserted as though incorporated.

229. Janney asserts this claim against Newmont for unlawful retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a).

32

230. Janney had a good faith belief Newmont engaged in discriminatory and retaliatory conduct in violation of Title VII.

231. Newmont retaliated against Janney because he opposed Newmont's requirements that he strongly encourage other Newmont employees to take the vaccine and strongly support the vaccine mandate.

232. Janney incorporates his prior statements in this Complaint setting forth his protected activities and protected opposition to Newmont's religious discrimination.

233. At all times, Newmont was aware of Janney's protected Title VII activities.

234. Newmont intentionally retaliated against Janney by subjecting him to continual, intentional, cumulative, increasingly severe, and materially adverse employment actions that might deter a reasonable person from engaging in protected activity.

235. Janney incorporates his prior statements in this Complaint setting forth Newmont's adverse material actions against him.

236. Janney incorporates his prior statements in this Complaint setting forth the casual connection between his protected activities and opposition to religious discrimination and Newmont's adverse material actions against him.

237. The intentional, unlawful retaliation was created, perpetrated, and/or tolerated by Newmont's officials, managers, and employees.

238. Newmont's treatment of Janney, considered in its totality and cumulative manner, is direct, intentional, and materially adverse actions constituting unlawful retaliation and discrimination prohibited by Title VII.

239.    Newmont's treatment of Janney is unlawful intentional retaliation and discrimination in violation of Title VII, 42 U.S.C. § 2000e-3(a), and an intentional, unlawful discriminatory practice in violation of 42 U.S.C. § 1981a.

## VII.    REQUEST FOR RELIEF

WHEREFORE, Plaintiff Dan Janney respectfully requests this Court to enter judgment in his favor and against Newmont on all claims asserted in this Complaint and Request for Jury Trial and award the following relief.

1.    To enter a judgment for Janney, finding the acts of Newmont are continuing and intentional religious discrimination in violation of Title VII.

2.    To award Janney the remedies of damages for backpay, restored benefits, actual monetary damages, loss of wages, salary, retirement contributions, all loss of income, and all loss of monetary damages to which he is entitled under Title VII.

3.    To award Janney compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, future monetary losses, and all loss of compensatory damages to which he is entitled under Title VII.

4.    To award Janney punitive damages to which he is entitled under Title VII.

5.    To award Janney front pay, under Title VII.

6.    To award Janney attorney fees and costs under Title VII and all laws to which he is entitled to receive attorney fees and costs.

7.    To award Janney pre-judgment and post-judgment interest at the proper rate under the law.

8.    To award Janney all other legal and equitable relief to which he is entitled

under any law that this Court considers just, equitable, and proper.

## VIII.    JURY TRIAL REQUEST

Under Fed.R.Civ.P. 38 (a)(b)(c), 42 U.S.C. § 2000e-5, and 42 U.S.C. § 1981a (c)(1), and all applicable laws providing for a right to trial by jury, Plaintiff Janney requests a jury trial of all claims and issues.

Dated: December 21, 2023.

Respectfully submitted,


*/s/ Steven L. Murray*
Murray Law, LLC
3900 East Mexico Avenue, Suite 300
Denver, CO  80210
Telephone: (303) 396-9952
Email: steven@smurraylaw.com

Plaintiff's Address:

Dan Janney
5337 West Hidden Rose Circle
Herriman, UT 84096